UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SONIA GONZALEZ ORTIZ,

      Plaintiff,

v.                                                                    Case No. 8:20-cv-0864-T-MAP

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

_____/

**<u>ORDER</u>**

      This is an appeal of the administrative denial of supplemental security income (SSI).[1] *See* 42 U.S.C. § 1383(c)(3).   Plaintiff contends that the Administrative Law Judge (ALJ) improperly discounted Plaintiff's mental health treatment records, including the notes of her treating psychiatrist Lendita Haxhiu-Erhardt, M.D., and failed to consider Plaintiff's borderline age situation.   After considering Plaintiff's arguments, Defendant's response, and the administrative record (docs. 19, 25), I find the ALJ did not apply the proper standards.   I reverse the ALJ's decision.

      *A.   Background*

      Plaintiff Sonia Gonzalez Ortiz was born on May 8, 1965, and was 50 years old on her alleged disability onset date of July 16, 2015. (R. 1084)  Plaintiff dropped out of school in the eleventh grade and has past relevant work as a hotel housekeeper. (R. 1121) As of December 20, 2019 (the date of her most recent administrative hearing), Plaintiff was living in Cleveland, Ohio with her adult son. (R. 1120)  She has two children and two grandchildren.  Plaintiff

---

[1] The parties have consented to my jurisdiction.  *See* 28 U.S.C. § 636(c).

alleges disability due to anemia, acid reflux, depression, anxiety, sleep apnea, precancerous changes to the vagina, "mild cropatonal right hand," and carcinoma of the vagina. (R. 217)

On November 15, 2017, after a hearing at which Plaintiff and a vocational expert (VE) testified, the ALJ issued a decision that Plaintiff is not disabled. (R. 11-28, 35-59)  The Appeals Council (AC) denied review, and Plaintiff appealed to the Northern District of Ohio.  In a June 11, 2019 decision (R. 1236-68), United States Magistrate Judge Jonathan Greenberg found "the ALJ failed to properly evaluate Dr. Haxhiu-Erhardt's December 2016 opinion" because the ALJ's reasons for discounting it were not supported by substantial evidence. (R. 1263)  Instead, according to Judge Greenberg, the ALJ "selectively parsed through" the medical evidence when discounting the opinion. (R. 1265)  "Indeed, the ALJ does not sufficiently explain how … referencing several normal examination findings supports affording long-time treating physician Dr. Haxhiu-Erhardt's opinion 'partial weight.'" (*Id*.) Judge Greenberg reversed the Commissioner's decision and remanded Plaintiff's case.

The AC vacated the Commissioner's decision and remanded the case to the same ALJ for further administrative proceedings.  And because Plaintiff had filed a subsequent claim for Title XVI benefits on June 15, 2018, the AC consolidated Plaintiff's claims.[2] (R. 1065)  The same ALJ held another hearing at which Plaintiff appeared and testified. (R. 1114-41) Following the hearing, the ALJ found that Plaintiff suffers from the severe impairments of obesity, hypertension, anemia, carpal tunnel syndrome of the right wrist, patellofemoral stress syndrome of the right knee, somatoform disorders, major depressive disorder, anxiety

---

[2]   Plaintiff had previously filed applications for SSI and DIB in July 2012.  An ALJ denied those claims in February 2014. (*See* R. 63-73, 1065-66)

disorder, and borderline intellectual functioning. (R. 1068)  Aided by the testimony of a VE,

the ALJ again determined Plaintiff is not disabled, despite these impairments, as she retains

the residual functional capacity (RFC) to perform light work with these limitations:

> [E]xcept the claimant can lift and/or carry 20 pounds occasionally and 10
> pounds frequently.  The claimant can stand and/or walk for six hours in an
> eight-hour workday and sit for six hours in an eight-hour workday.  The
> claimant can only push and pull with the right lower extremity.  The claimant
> can frequently operate foot controls with the right foot.  The claimant can
> frequently operate hand controls with the right hand.  The claimant can only
> frequently handle and finger with the right hand.  The claimant can only
> occasionally climb ramps and stairs, never ladders, ropes, or scaffolds, and only
> occasionally balance, stoop, kneel, crouch, and crawl.  The claimant can never
> work at unprotected heights.  The claimant is limited to only simple, routine
> and repetitive tasks with no strict production rate pace requirements with only
> occasional interactions with supervisors, co-workers and the public, and only
> routine workplace changes.

 (R. 1073)  The ALJ found that, with this RFC, Plaintiff could perform her past relevant work

as a hotel housekeeper and could also work as a cafeteria attendant, an inspector and hand

packager, and a routing clerk. (R. 1085)  Plaintiff (who by that time had moved to Florida)

again appealed the ALJ's decision denying benefits, and the AC denied review.   Her

administrative remedies exhausted, Plaintiff filed this action (Doc. 1).

*B.  Standard of Review*

To be entitled to SSI, a claimant must be unable to engage "in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."  *See* 42 U.S.C. § 1382c(a)(3)(A).  A "'physical or mental

impairment' is an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 416.920(a)(4).  Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience.  20 C.F.R. § 416.920(a)(4).  A claimant is entitled to benefits only if unable to perform other work.  *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings.  *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations

omitted).  The Court may not reweigh the evidence or substitute its own judgment for that of

the ALJ even if it finds the evidence preponderates against the ALJ's decision.  *See Bloodsworth*

*v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's "failure to apply the

correct law or to provide the reviewing court with sufficient reasoning for determining the

proper legal analysis has been conducted mandates reversal."  *Keeton*, 21 F.3d at 1066

(citations omitted).

    C.  *Discussion*

        1.  *ALJ's consideration of Plaintiff's mental health treatment*

Plaintiff argues that the ALJ erred by: failing to state the weight he assigned to Janis

Woodworth, Ph.D.'s September 17, 2018 consultative psychological evaluation, assigning

only "partial weight" Mitchell Wax, Ph.D.'s October 21, 2015 consultative psychological

evaluation, and not articulating good cause for discounting treating psychiatrist Dr. Haxhiu-

Erhardt's opinions.   I start with a discussion of the ALJ's weighing of Dr. Haxhiu-Erhardt's

opinions, because it is not supported by substantial evidence and requires remand.

        a.  *Dr. Haxhiu-Erhardt's opinions*

This case came before the ALJ on remand from the AC based on the district court's

finding that the ALJ "fail[ed] to set forth good reasons for discounting the December 2016

opinion of Dr. Haxhiu-Erhardt." (R. 1267)  On remand, the ALJ made the same RFC finding

as before – that Plaintiff retained the RFC for light work with (the same) limitations. (R. 18,

1072-73)  But Plaintiff asserts that, despite the district court and the AC's remand instruction,

the ALJ again erred by failing to properly consider Dr. Haxhiu-Erhardt's opinions.

Specifically, Plaintiff admonishes the ALJ for finding Dr. Haxhiu-Erhardt's opinions only

partially consistent with the medical evidence of record based on the same faulty rationale (doc. 25 at 36-46).

In assessing whether a claimant can—despite any physical or mental impairments—obtain and perform any work that exists in substantial numbers in the national economy, the ALJ must give special attention to the opinions of a claimant's treating physician. *Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094 (11th Cir. Aug. 12, 2021). The SSA regulations applicable when Plaintiff filed her application required an ALJ to give "controlling weight" to a treating physician's opinions if they were "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence in [the] case record."[3] *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)). Eleventh Circuit case law dictates that a treating physician's opinion must be given substantial or considerable weight unless good cause is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).[4] Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted).

---

[3] Although the Commissioner revised the rules regarding evaluating medical evidence on January 18, 2017, the revisions became effective March 27, 2017, and they only apply to applications filed on or after that date. *See* 20 C.F.R. § 416.920c. Because Plaintiff filed her claim for benefits before March 27, 2017, the rules in § 416.927 govern.

[4] Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (quoting 20 C.F.R. § 404.1527(a)(2)).

While an ALJ may reject a treating physician's findings when there is good cause, "he must clearly articulate [the] reasons for doing so." *Simon*, 7 F.4th at 1104 (quoting *Winschel*, 631 F.3d at 1179).  As the *Simon* court explained:

> If the ALJ fails to state reasonable grounds for discounting such evidence, we will not affirm "simply because some rationale might have supported the ALJ's conclusion." (citation omitted).  It is the responsibility of the [SSA], not the reviewing court, to supply the justification for its decision and to sufficiently explain "the weight [it] has given to obviously probative exhibits." (citation omitted).

*Simon*, 7 F.4th at 1105.  In *Simon*, the Eleventh Circuit reversed the district court's decision, finding the ALJ failed to state good cause to discount the opinions of the claimant's treating psychiatrist.  The ALJ in this case likewise erred.

As in *Simon*, the administrative record here contains extensive treatment notes from Plaintiff's psychiatrist, Dr. Haxhiu-Erhardt, beginning in 2012 (three years before the alleged onset date) and continuing through the date of the ALJ's most recent administrative hearing (December 2019).  Dr. Haxhiu-Erhardt diagnosed Plaintiff with major depressive disorder with psychotic features, and throughout her lengthy treatment she described Plaintiff's severe symptoms of mental illness such as paranoia, auditory hallucinations, significant forgetfulness, depression, anxiety, and intolerance of other people.

On December 22, 2016, Dr. Haxhiu-Erhardt treated Plaintiff and observed she "[c]ontinues to have significant issues with forgetfulness" and "cannot remember simple details." (R. 2870)  Family members had told Plaintiff she was so forgetful she could not cook a meal. (*Id.*)  The psychiatrist indicated Plaintiff was paranoid and "hears her name being called all day long." (*Id.*) That same day, Dr. Haxhiu-Erhardt filled out a mental impairment questionnaire on Plaintiff's behalf. (R. 2968-69)  She noted her long treatment relationship

with Plaintiff and that Plaintiff was depressed, anxious, forgetful, confused, intolerant of others, and hearing voices.  When asked if Plaintiff's mental impairments would last at least 12 months, she circled "Yes" and wrote "it has been six years." (R. 2968)

Dr. Haxhiu-Erhardt found that Plaintiff has no useful ability to function in these areas: maintaining attention and concentration for extended periods; working in coordination with or in proximity to others without distraction; completing a normal workday and workweek without interruptions from psychologically based symptoms; remembering locations and work-like procedures; understanding and remembering detailed instructions; getting along with co-workers or peers without districting them or exhibiting behavioral extremes; and responding appropriately to changes in the work setting. [5] (R. 2968-69)  Next, according to the psychiatrist, Plaintiff could not meet competitive standards in these areas: carrying out detailed instructions; performing activities within a schedule; sustaining an ordinary routine without special supervision; performing at a consistent pace without an unreasonable number and length of rest periods; understanding and remembering very short and simple instructions; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; being aware of normal hazards and taking precautions; and setting realistic goals or making plans independently of others. (*Id.*)

And, according to Dr. Haxhiu-Erhardt, Plaintiff was seriously limited but not precluded from:  carrying out very short and simple instructions; managing regular attendance and being punctual within customary tolerances; interacting appropriately with the general

---

[5] The form defines an "extreme limitation" as "no useful ability to function" and defines a "marked limitation" as "two thirds of an eight-hour workday." (R. 2968)

public; and maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness. (*Id.*)  The psychiatrist opined Plaintiff would miss three or more days of work each month and would be off-task 50 to 75 percent of the workday (these answers were "just a guess"). (R. 2969)

Besides her regular treatment notes, Dr. Haxhiu-Erhardt also wrote an April 2017 letter stating that Plaintiff suffers from depression with psychotic features, pernicious anemia with end organ complications, hypertension, and sleep apnea. (R. 3104) She opined that "the most work prohibitive symptom has been progressive amnesia with dissociation." (*Id.*) Plaintiff's concentration was severely impaired, and she suffered from low energy and concentration. (*Id.*)

Next, on September 24, 2018 – between the ALJ's first and second decisions – Dr. Haxhiu-Erhardt completed another mental impairment questionnaire. (R. 2562-63)  She indicated she had treated Plaintiff monthly for at least three years.  After confirming Plaintiff's diagnosis of major depressive disorder with psychotic features, Dr. Haxhiu-Erhardt reported that Plaintiff had panic attacks, agoraphobia, confusion, paranoia, difficulty concentrating, fibro fog, short term memory problems, and sadness. (*Id.*)  Compared to her answers in December 2016, Haxhiu-Erhardt checked boxes corresponding to slightly different work-related limitations.  Plaintiff had no useful ability to complete a normal workday, work at a consistent pace, or understand and remember detailed instructions. (*Id.*)  She could not meet competitive standards in carrying out detailed instructions, maintaining attention and concentration, working in coordination with others, remembering locations and work-like procedures, and accepting instructions from supervisors. (*Id.*) And she was seriously limited

but not precluded from performing activities on a schedule, managing regular attendance, sustaining a routine, understanding and remembering very short and simple instructions, asking simple questions, and getting along with co-workers. (*Id*.)  She estimated Plaintiff would be off task two to three hours in an eight-hour workday (rather than 50 to 75 percent of the time, like she had postulated in December 2016).

Dr. Haxhiu-Erhardt completed her final mental status questionnaire on November 18, 2018. (R. 3615-19)  She noted that at Plaintiff's last appointment she was neatly groomed but tired, anxious, depressed, and irritable. (R. 3615)  She had panic attacks and paranoia, was apathetic and lacked motivation, and had a very poor memory.  Her "baseline is suspicious/ does not feel comfortable with other people around." (R. 3616)  Dr. Haxhiu-Erhardt reported that Plaintiff's pernicious anemia and severe B12 deficiency caused lethargy and fatigue. (*Id*.)

Dr. Haxhiu-Erhardt's September and November 2018 questionnaires post-date the ALJ's first decision, but they were in the administrative record for the ALJ's second decision. From his first to his second decision, the ALJ's reasons for discounting Dr. Haxhiu-Erhardt's opinions are very similar.  In his first decision, after summarizing the psychiatrist's December 2016 questionnaire, the ALJ wrote:

> I note the treating relationship duration and that Dr. Haxhiu-Erhardt is a treating source specializing in psychiatry (Ex. B7F/1).  I find that Dr. Haxhiu-Erhardt's opinion regarding serious limitations is consistent with examinations that showed the claimant had ongoing depressed, sad, and anxious mood, and at times, impaired attention and concentration, distractibility, and difficulty with memory (Ex. B6F/3, 14, 25, 36, 43, 63, B8F/3, 10, 60, 82, 90, 123, B9F/19, 43).  However, I find that this opinion regarding a degree of no useful ability or unable to meet competitive standards is inconsistent with examinations that demonstrated the claimant was routinely well groomed with good hygiene, cooperative, normal speech, logical and organized thought process, sustained attention and concentration, normal memory, fair judgment and insight, and adequate fund of

10

knowledge support these opinions (Ex. B1F/159, B6F/3, 14, 25, 36, 63, B8F/3, 10, 60, 82, 90, 123, B9F/19, 43).  In addition, I find that the degrees of limitation are not supported by the record that showed the claimant's ability to engage in daily activities, such as managing her personal care, performing household tasks, interacting with family on a daily basis, and leaving the country for vacation (Ex. B6E/5, B2F/2-4, B8F/9, B9F/33).  Further, Dr. Haxhiu-Erhardt did not provide support or explanation, and in particular, indicated that her opinion regarding "off task" was just a guess.  Therefore, I give partial weight to this opinion.

(R. 24).  In his second decision, attempting to satisfy the district court's remand instruction "to sufficiently address the limitations assessed by Dr. Haxhiu-Erhardt," the ALJ mentioned the psychiatrist's September and November 2018 opinions at the end of his paragraph summarizing her December 2016 questionnaire, he reworded and restructured some of his discussion of the functional limitations identified by Dr. Haxhiu-Erhardt, and he added one and one-half additional paragraphs.

The ALJ's new paragraph juxtaposes Dr. Haxhiu-Erhardt's estimate that Plaintiff would spend 50 to 75 percent or two to three hours of a workday off-task, with Plaintiff's testimony she microwaves her own meals, bathes twice a week, does laundry every two weeks, sweeps and cleans the bathroom once a week, and sometimes watches her grandchildren. (R. 1081)  Also, the ALJ repurposed the paragraph from his first decision regarding the psychiatrist's December 2016 opinion.  The ALJ's second decision states:

> I note the treating relationship and duration; however, I give Dr. Haxhiu-Erhardt's opinions limited weight because limitations ranging from unable to meet competitive standards to no useful ability to function and the excessive degree of off task is inconsistent with the record and does not support this degree of functioning.  The claimant routinely presented on examination as well groomed with good hygiene, cooperative, normal speech, logical and organized thought process, sustained attention and concentration, normal memory, fair judgment and insight, and adequate fund of knowledge.  Her ability to routinely present in this manner despite her symptoms does not support 50 to 75 percent or two to three hours off task, inability to meet competitive standards, or no useful ability to function (Ex. B1F/159, B6F/3,

11

> 14, 25, 36, 63, B8F/3, 10, 60, 82, 90, 123, B9F/19, 43).  Further, examinations conducted by Dr. Haxhiu-Erhardt do not support the opined degree of limitations.  For example, during an examination in August 2018, the claimant presented with anxious mood and constricted affect but was well groomed, cooperative, oriented and showed normal speech, logical and organized thought content, no evidence of paranoia, delusions, or perceptual disturbance, sustained attention and concentration, recent and remote memory within normal limits, and fair judgment and insight (Ex. B31F/5).

(R. 1081)   Then, the ALJ repeats the same verbiage about Plaintiff's "well-groomed" appearance when discussing Dr. Haxhiu-Erhardt's April 2017 letter:  "the claimant presented as well groomed, cooperative, and oriented with normal speech, logical and organized thought process, no evidence of perceptual disturbance, sustained attention and concentration, memory within normal limits, fair to good insight and judgment, and described as a good historian despite issues with mood, anxiety, and some instances of paranoid thoughts." (R. 1082) Based on these observations, the ALJ concluded that Dr. Haxhiu-Erhardt's opinions are inconsistent with the doctor's own records and with "other examinations," and he discounted them. (R. 1081-82)

Upon review of Dr. Haxhiu-Erhardt's extensive treatment notes, however, I cannot find substantial evidence to support the ALJ's conclusion.  The ALJ addressed Plaintiff's behavior and demeanor at a handful of appointments, but neglected to address in any detail her panic disorder, auditory hallucinations, significant issues with forgetfulness, anxiety, confusion, inability to concentrate, sadness, irritable mood, lethargy, apathy, and increased crying.  These significant symptoms are not only noted by Dr. Hazhiu-Erhardt, but also by Nellie Krawczynski, a therapist who worked with Dr. Haxhiu-Erhardt in treating Plaintiff.

For example, the ALJ cites to Exhibit B6F, page 25 as evidence of Plaintiff's normal mental status examinations. (R. 1081-82)  This is Ms. Krawczynski's record of an October

2016 therapy appointment with Plaintiff where she relayed she had experienced a panic attack the night before and could not board a plane to Puerto Rico to visit family that day because of a paralyzing fear of impending doom. (R. 787)  The ALJ also cites to B8F, page 60, a note from a February 2017 therapy appointment where Ms. Krawczynski noted Plaintiff's high levels of stress and anxiety, and B9F, page 43, a note from a June 2017 appointment during which Plaintiff told Ms. Krawczynski she was overwhelmingly sad and had significant stressors in her life. (R. 923, 1038-39, 1081-82)  Interestingly, the ALJ then cites to Exhibits 20F, 22F, and 25F as a whole (R. 1082) – duplicates of Exhibits 6F, 8F, and 9F (which the ALJ cites portions of, as explained above) – replete with notes of Plaintiff's anxiety, paranoia, auditory hallucinations, panic attacks, overwhelming sadness, forgetfulness, and impaired attention and concentration. (R. 2870, 2881, 2892, 2972, 3060, 3128, 3151-52)  Exhibit 31F, treatment notes from Dr. Haxhiu-Erhardt from January 2017 through August 2018, paints the picture of a patient who tried working but whose symptoms derailed her, is anxious, depressed, prone to panic attacks, cries daily, is distracted, and struggles to remember things. (R. 3378, 3389, 3399-3401, 3412, 3451, 3459-60, 3501)  The ALJ cites this exhibit as evidence of Plaintiff's well-groomed appearance and organized thought processes. (R. 1082)

As in *Simon*, this Court finds that the ALJ mischaracterized Dr. Haxhiu-Erhardt medical records.  *See Simon*, 7 F.4th at 1106 ("We conclude that isolated entries in Dr. Turner's treatment notes indicating that Simon was at times stable on his meds, without more, cannot constitute or contribute to good cause to reject Dr. Turner's opinions.").  This error requires remand.  Relatedly, as in *Simon*, the ALJ erred by concluding that Dr. Haxhiu-Erhardt's references to the Plaintiff being "well-groomed" with "normal speech" or his

13

description of Plaintiff's judgment as "fair to good" or her demeanor as "cooperative" were inconsistent with his finding that Plaintiff suffers from debilitating mental illness. *Id.* at 1106.

Although *Simon* involved a claimant diagnosed with bipolar disorder, Plaintiff's mental health diagnosis of major depressive disorder with psychotic features is a chronic condition too. Chronic mental disorders are characterized by "unpredictable fluctuation of their symptoms, and this it is not surprising that even a highly unstable patient will have good days or possibly good months." *Id.* (quoting *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)). For those who suffer from chronic disorders, "'a snapshot of any single moment says little about [a person's] overall condition,' and an ALJ who relies on such snapshots to discredit the remainder of a psychiatrist's findings demonstrates a 'fundamental, but regrettably all-too-common, misunderstanding of mental illness.'" *Id.* (quoting *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011)). And, "it is improper for an ALJ to dismiss a psychiatrist's treatment notes as 'indicating only mild limitations … at best' simply because 'some of [the claimant's] mental-status examination were better than others.'" *Id.* (quoting *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1262 (11th Cir. 2019)). Like the claimant in *Simon*, the Plaintiff's diagnosis caused Plaintiff to experience more serious symptoms than those acknowledged by the ALJ. These conditions, in Dr. Haxhiu-Erhardt's opinion, resulted in significant limitations on Plaintiff's mental and social functioning. I conclude that the entries in Dr. Haxhiu-Erhardt's treatment notes indicating Plaintiff's mental functioning was within "normal limits," without more, cannot constitute good cause to reject Dr. Haxhiu-Erhardt's opinions.

To the extent the ALJ found that Dr. Haxhiu-Erhardt's opinions "inconsistent with" her treatment notes, Plaintiff's testimony of her daily activities, and "other examinations"

14

(which are all records from Dr. Haxhiu-Erhardt's practice) (R. 1081, 1082), the Court also finds error. In support of this conclusion, the ALJ emphasizes that Dr. Haxhiu-Erhardt's opinions are based at least in part of Plaintiff's subjective reports. (R. 1082) However, a "psychological assessment is by necessity based on the patient's report of symptoms and responses to questioning" and "it's illogical to dismiss the professional opinion of an examining psychiatrist or psychologist simply because that opinion draws from the claimant's reported symptoms." *Roundtree v. Saul*, No. 8:18-cv-1524-T-SPF, 2019 WL 4668174, at \*4 (M.D. Fla. Sept. 25, 2019) (quoting *Aurand v. Colvin*, 654 F.App'x 831, 837 (7th Cir. 2016)). Second, to the extent that the ALJ labels Dr. Haxhiu-Erhardt's opinions "inconsistent" with other record evidence, the Court finds no "genuine" inconsistency. In *Simon*, the Eleventh Circuit found that the ALJ had failed to identify a "genuine" inconsistency between the treating psychiatrist's opinions and the assessments of consultative doctors, explaining:

> "It is not enough merely to point to positive or neutral observations that create, at most, a trivial and indirect tension with the treating physician's opinion by proving no more than that the claimant's impairments are not all-encompassing." *Schink*, at 1263. Consequently, when a claimant has been diagnosed with the types of mental and emotional disorders at issue here, highly generalized statements that the claimant was "cooperative" during examination, that he exhibited "organized speech" and "relevant thought content," or that he showed "fair insight" and "intact cognition," ordinarily will not be an adequate basis to reject a treating physician's opinions. *Id.* at 1262. Nor is it enough to say that the claimant is 'intelligent enough to understand and follow orders and to solve problems,' such as serial sevens, because "highly intelligent and able persons do fall prey to crippling depression." *MacGregor*, 786 F.2d at 1053-54.

*Simon*, 7 F.4th at 1107. Following *Simon*, the Court finds that the ALJ's cursory conclusion that recent treatment notes and exams show Plaintiff is "well groomed, cooperative, and oriented with normal speech, logical and organized thought process, no evidence of

15

perceptual disturbance, sustained attention and concentration, memory within normal limits, fair to good insight and judgment, and described as a good historian despite issues with mood, anxiety, and some instances of paranoid thoughts" (R. 1082) fails to establish a "genuine" inconsistency. My review of the evidence shows Plaintiff's significant symptoms have persisted and that other providers have noted these symptoms too. For example, Plaintiff treated with cardiologist Grace Cater, M.D. in January 2019 for heart palpitations. Dr. Cater described Plaintiff as having anxiety and depression with episodes of heart palpitations associated with these conditions two to three times per week that last two to three minutes each time. (R. 3773-74) In February 2019, Dr. Haxhiu-Erhardt noted Plaintiff had been to the ER "several times for horrible panic attacks." (R. 3803) And consultative psychologist Dr. Wax observed that Plaintiff was anxious and had body tremors. (R. 568-69) During the consultative examination, Plaintiff "rocked intensely in her chair," was "anxious and inattentive," and "intermittently distorted questions." (R. 569-70) Dr. Wax concluded that Plaintiff would not respond appropriately to coworkers in a work setting due to her depression and anxiety, would struggle understanding, remembering, and carrying out simple instructions, and would have difficulty maintaining attention and concentration. (R. 571)

And in remanding this case, I point out that an ALJ must consider "the fundamental differences between the relaxed, controlled setting of a medical clinic and the more stressful environment of the workplace." *Simon*, 7 F.4th at 1107 (quoting *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000)) ("for a person who suffers from an affective disorder or personality disorder marked by anxiety, the work environment is completely different from home or a mental health clinic"); *see also Schink*, 935 F.3d at 1263 ("it is not inconsistent – or even that

unlikely … that a patient with a highly disruptive mood disorder, in a structured one-on-one conversation with a mental health professional, might be capable of 'be[ing] redirected' from his 'tangential' thought processes so as to 'remain on topic.'"); *Castro v. Comm'r of Soc. Sec.*, 783 F.App'x 948, 956 (11th Cir. 2019) ("Without more, we cannot say that [the treating physician's] observations of Castro's judgment, insight, thought process, and thought content in a treatment environment absent work stressors were inconsistent with his assessments about the limitations she would face in a day-to-day work environment").

Although the ALJ correctly notes he does not have to refer to every piece of evidence, considering Plaintiff's mental health treatment history and the regulations, the Court cannot conclude that substantial evidence supports the ALJ's decision.  Dr. Haxhiu-Erhardt is indisputably a specialized treating physician (a psychiatrist) who treated Plaintiff for the entire relevant time frame (beginning before her onset date through 2019).  She is the only treating psychiatrist who has submitted opinions.  Her opinions are consistent with the bulk of other evidence in the file, including opinion evidence from Plaintiff's therapist, Ms. Krawczynski[6] (who treated Plaintiff with Dr. Haxhiu-Erhardt during the entire relevant time frame); the ALJ failed to clearly articulate good cause for discounting Dr. Haxhiu-Erhardt's opinions.

    *2.  Remaining Issues*

Considering the remand, it is unnecessary to address the remaining issues (the ALJ's consideration of the consultative psychologists' opinions and Plaintiff's borderline age situation).  However, given my finding that substantial evidence does not support discounting

---

[6] An LCSW, as an "other source," is not an "acceptable medical source," but the ALJ should consider such opinions.  *See* 20 C.F.R. § 416.927.

Dr. Haxhiu-Erhardt's opinions, neither is there substantial evidence to support the ALJ's RFC determination.  On remand, the ALJ is also directed to address whether a borderline situation exists.[7]

### D. Conclusion

It is ORDERED:

    (1) The ALJ's decision is REVERSED and REMANDED to the Commissioner for further administrative proceedings consistent with this Order; and

    (2) The Clerk of Court is directed to enter judgment for Plaintiff and close the case.

DONE and ORDERED in Tampa, Florida on September 29, 2021.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

---

[7] "Borderline age" means that the claimant is "within a few days to a few months of reaching an older age category." 20 C.F.R. § 416.963(b).  In a borderline age situation, using the older age category may result in a determination that the claimant is disabled, so the ALJ must evaluate the overall impact of all the factors in the claimant's case and consider whether to use the older age category. *Id*.  Plaintiff was 50 years old on her alleged onset date and 54 years and 9 months old when the ALJ issued his second decision that Plaintiff is not disabled.